[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a suit for dissolution of marriage brought by the plaintiff wife against the defendant husband. The action was commenced by service of the complaint upon the defendant on January 8, 1997. The matter came on for trial on May 26 and was referred to the undersigned for trial by Hon. Myron Ballen, Presiding Judge.
The parties were married on August 20, 1975 in Bridgeport, Connecticut. There are two children issue of the marriage, a daughter, Terry J. Rifkin, who is twenty-one years of age, and a son, Daniel P. Rifkin, who is seventeen years of age. Daniel was born March 30, 1981. Thus, as the dates stated above reflect, it is a marriage of twenty-two years duration.
At the time of their marriage, the plaintiff, who has her Bachelor's Degree from Boston University, and a Master's Degree from Fairfield University, was a substitute teacher in the Fairfield education system. When their daughter Terry was born, the plaintiff terminated her employment for Terry's birth and subsequent care. Except for a period of approximately three years after the marriage when the plaintiff worked part time at the Fairfield Department Store, and the last year and a half or two years, she has not worked outside the home for pay. She has, however, worked in numerous non paying positions, i.e., Past President of the Junior Board of the Discovery Museum, Past CT Page 7657 President of the Stratfield Improvement Association, Past President of the school P.T.A., a member of the Fairfield Board of Education, a member of the Fairfield RTM for ten years serving five years as majority leader, and the Fairfield P.T.A. Council, to name but a few. In 1996, she took a seasonal job at Silver's store in Westport and now has three part time jobs as a substitute children's librarian at Fairfield Public Library, Children's Librarian at Pequot Public Library (job share — three days per week) and as a co-facilitator to help people quit smoking.
The plaintiff is forty-eight years of age and in good health. She has returned to Fairfield University and is currently taking her final course leading to certification as a public school teacher. She has two more courses, however, to complete leading to a degree in education as a library medium specialist. She will then be eligible, after state certification, to work as a public school librarian at an annual salary of $36,000. She will finish this course in eighteen months.
The plaintiff's maiden name is Postol. Her mother, who, likewise, was very active in the Town of Fairfield, died within the past month. By the terms and provisions of her will, the plaintiff will receive from her mother's estate her wearing apparel, personal effects and jewelry. (See defendant's exhibit 1, Article Third A), which she has valued in her financial affidavit at $25,000.
In 1991, the plaintiff's mother and father established the Postol Family Partnership. (See plaintiff's exhibit A). At that time, assets belonging to plaintiff's parents totaling one million dollars plus were transferred to the partnership. The value of the partnership, as of December 31, 1997, was $2,272,000. A substantial portion of the assets consists of municipal bonds and other partnership interests which primarily hold mortgages. In addition to Mr. And Mrs. Postol as the managing partners, there are five other partners. (See plaintiff's exhibit A.) Plaintiff's share of the partnership assets is currently valued at $403,464. Plaintiff, as Trustee for each of her children, manages trusts valued at $196,000 each, which generated income in 1997 of $16,500 in each trust. (See defendant's exhibits 10, 11, 12 and 13.) Capital contributions, income and distributions of plaintiff's partnership capital account are set forth in the attachment to her financial affidavit.
At the time of their marriage, the defendant, who is CT Page 7658 fifty-two years of age, was employed by NBC Broadcasting in New York City in the finance department. He had majored in accounting and received his bachelor's degree from the University of Bridgeport. In 1977, he left his job at NBC and worked for City Lumber. His job at City Lumber was also in finance and accounting. City Lumber at that time was owned by the Schine family and Nathan Schine was plaintiff's grandfather. The defendant remained in the employ of City Lumber until 1986 when the company was sold to New Haven Terminal Corporation. He remained with New Haven Terminal, first as its risk manager and then as company comptroller, until 1989 when he was terminated. It was at this point that the defendant acquired a one-third interest in a New Hampshire business, Suncook Trim Corporation, a manufacturing company which makes woven labels for clothing.
Suncook has suffered consequential losses the last three years (see defendant's exhibits 7, 8 and 9). However, for the first four months of 1998, the business has shown a profit. (See plaintiff's exhibit C.) Whether that profit continues to year end remains speculative.
Defendant's salary for the period 1993 to date has been as follows:
 1993 $103,430 of which $24,583 was from New Haven Terminal;
 1994 $142,587 of which $3,333 was from New Haven Terminal and $7,800 from Paul Revere Companies;
1995 $90,165;
 1996 $86,069 of which $26,000 was from Paul Revere Company;
1997 Tax return not yet prepared.
 1998 Current salary — $92,300 ($1,775.00 weekly) (Defendant's financial affidavit and defendant's exhibit 4.)
The amounts from Paul Revere Companies in 1994 and 1996 were apparently disability payments. CT Page 7659
The defendant is not in good health. In 1991, he suffered a heart attack. In July, 1993, he suffered another more severe heart attack and then two more heart attacks before open heart surgery in the fall of 1993. Bypass surgery was performed in the fall of 1993 He returned to work in January, 1994. In January, 1996, he was hospitalized again for a period of ten days with severe depression. Beginning in December, 1995, he was treated in psychiatric therapy. It was also in January or February, 1996, that the plaintiff advised the defendant and his father-in-law that the family had incurred $80,000 in credit card debt and $5,000 in outstanding unpaid medical bills. This was a precipitating factor in the breakdown of the marriage.
It is the plaintiff's claim that the defendant's revelation of the incurring of debt was a betrayal of trust. She claimed to have been "shocked" by the defendant's failure to be diligent concerning their finances. The credit card debt had been incurred by both of the parties and also daughter Terry. From early on in the defendant's work at Suncook, he had been living in New Hampshire from Monday until Thursday or Friday, returning home only on weekends. The parties began to drift apart in 1995. Early in 1996, the plaintiff took on the family finances. The credit card debt and outstanding medical bills were paid with a distribution from the plaintiff's partnership capital account.
In 1982, the parties purchased the present family home on Crest Terrace in Fairfield. The house was purchased with the proceeds of sale from their first home on Raymond Circle, which was purchased in 1976. This purchase was possible with $14,000 given by plaintiff's grandfather. The cost of a bath on the second floor was also contributed by grandfather. Crest Terrace was also financed by a loan from the plaintiff's parents for $50,000 (see plaintiff's exhibit B) and a mortgage for $60,000. The mortgage was refinanced in intervening years and an equity credit line of $99,000 was used for siding the house at a cost of $14,000 or $15,000 and $40,000-$50,000 was used by the defendant for Suncook. During all of the period defendant has paid all the mortgage and home equity loan payments.
Daughter Terry entered college in 1995. She has studied this past year at Hebrew University in Israel and there have been air flights back and forth during the year paid for by both father and mother. She will be entering her senior year at Trinity College in the fall. While her own trust could pay her college expenses and tuition, her mother has chosen to pay such expenses out of her CT Page 7660 own partnership capital account. Son Daniel will be entering his senior year at Fairfield High School and talks of going to college.
The parties separated in late August or early September, 1996, and have lived separate and apart since then. The defendant has tried his very best to seek a relationship with his son Daniel and has contributed voluntarily to the support of the household. Relationships during all of the period have remained cordial. While the plaintiff feels the financial circumstances were all the defendant's fault, in fact the credit card statements were coming to the home and she, if she wished, could have determined the finances for herself. Additionally, both used the credit cards, so that the debt was not solely one individual's extravagances. The financial indebtedness in reality was incurred by both of the parties. The court finds, therefore, that neither party is at fault for the breakdown of the marriage. It simply occurred over time with each of the parties drifting apart.
The health of the defendant is a factor that must be given special consideration. This is one of those rare cases where each of the parties must receive an award of alimony. The fact that this has been a long marriage would indicate that it should be lifetime alimony, terminable only upon death, remarriage or cohabitation. By reason of the defendant's current ability to produce income greater than that of the plaintiff, the alimony to be paid by him to her should partially make up that difference until she has completed her present education leading to certification. This alimony should, then, be terminable upon the period contemplated for that education, a period of three (3) years.
With regard to the issue of support, support will be terminating upon Daniel's completion of his senior year of high school, presumably June, 1999. The net weekly wages of the parties as reported in their financial affidavits total $2,005, exceeding the $1,750 level of the Guidelines.
 "Above $1,750, court's remain free to fashion appropriate child support awards on a case-by-case basis, provided the amount of support prescribed at the $1,750 level is presumed to be the minimum that should be ordered in such cases."
Child Support and Arrearage Guidelines, June 1, 1994, Preamble, CT Page 7661 pg. Vii, (e)(1) Income Scope.
That figure is $327.00 to which each should contribute in accordance with each parent's share of the combined net weekly income.
Since the Guidelines are inapplicable, the court must consider the factors of § 46b-84 (c) of the General Statutes in determining a fair and equitable amount for each to contribute to Daniel's support. That section of the statutes provides as follows:
 In determining whether a child is in need of maintenance and, if in need, the respective abilities of the parents to provide such maintenance and the amount thereof, the court shall consider the age, health, station, occupation, earning capacity, amount and sources of income, estate, vocational skills and employability of each of the parents, and the age, health, station, occupation, educational status and expectation, amount and sources of income, vocational skills, employability, estate and needs of the child.
The court has considered all of the factors of this section in fixing support but has been mindful of the fact that Daniel is seventeen years of age, requires more personal needs for high school, entertainment, clothing (including shoes), food and athletic activities. The court is mindful, too, of the trust for his benefit, the income realized from the trust's partnership interest and the corpus of the trust consisting of the trust's capital account in the Postal partnership.
Finally, the court must determine a property division between the parties. The chief asset of the parties is the plaintiff's capital account in the Postol Family Partnership amounting to $403,464. This capital account was gifted to the plaintiff by her parents over the years 1991 through and including 1996. There are seven partners who, besides her mother and father, include the plaintiff, her brother, trusts for Terry and Daniel and trusts for plaintiff's brother's three children. (See plaintiff's exhibit A.) There are no non-family members.
In view of the parties' dissolution of their marriage, the court finds it would be inappropriate for the defendant to have a part in this asset. CT Page 7662
Another chief asset is the defendant's one-third interest in Suncook Trim Corporation although it is valued in the defendant's financial affidavit at zero value. The financial statements for 1995, 1995 and 1997 show a negative book value, the latest of which shows negative stockholders' equity of $256,285. On the other hand, land and buildings are reported at $373,000. It may be that its market value is more. The asset also permits an annual salary for the defendant of $92,300 and, therefore, has some value.
Since there has been no evidence beyond that set forth above, any further comment would be purely speculative. Suffice it to say there is outstanding debt of $2,600,000 including a note payable to plaintiff's father for $197,700 (see defendant's exhibit 9).
Plaintiff has stock valued in her financial affidavit at $5,037. These stocks were owned by her prior to her marriage. The IDS Mutual Fund was a gift from her grandfather. The Occidental and Eastgroup Property were purchased by her while working at Peoples Securities early in the 1970's.
There is a tax escrow fund held by Louis Strasser, the parties' accountant, in the amount of $17,000, and the house at 38 Crest Terrace in Fairfield has an equity value of $91,000. The sum of $50,000 was borrowed by the parties from plaintiff's parents to purchase the home at 38 Crest Terrace (see plaintiff's exhibit B). Neither party has treated this as a lien against the net equity, but it effectively reduces the net equity to $41,000. Additionally, in the event of the sale of the property, brokerage fees, conveyance taxes and closing costs would reduce this amount to $20,000 or $21,000. Since a substantial portion of the funds obtained on the home equity line of credit went into the defendant's business, it seems fair and equitable that the defendant's interest in 38 Crest Terrace be assigned to the plaintiff.
Finally, there has been no issue of custody of the minor child, Daniel, the parties agreeing that his custody will be with the plaintiff with reasonable and flexible visitation to the defendant.
In determining the proper orders in this case, the court must consider the factors set forth in §§ 46b-81, 46b-82 and 46b-84 of CT Page 7663 the General Statutes dealing with the issues of alimony, assignment of property and support. The law to be considered has been stated as follows:
 To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes § 46b-82; Thomas v. Thomas, 159 Conn. 477, 487, 271 A.2d 42
(1970); `This court has reiterated time and again that awards of financial settlement ancillary to a marital dissolution rest in the sound discretion of the trial court.' (Citation omitted.) Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisitions of assets of each of the parties, (citation omitted), no single criterion is preferred over all the others. In weighing the factors in a given case, the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight. Valente v. Valente, 180 Conn. 528, 530
(1980); Watson v. Watson, 221 Conn. 698, 710 (1992).
Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr, 183 Conn. 366,368 (1981), this court will not recount those statutory criteria and the evidence, other than as has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman, 188 Conn. 232, 234 (1982).
As to alimony, it has been said: "The primary basis for the award of alimony has been not to punish. . .but to continue the duty to support the other. . . ." Toby v. Toby, 165 Conn. 742,748 (1974).
The court, in addition to the foregoing findings, finds as follows:
1. There is the requisite jurisdiction.
2. The allegations of the complaint have been proved and are true. CT Page 7664
3. There has been an irretrievable breakdown of the marriage.
4. Neither party is legally at fault for the breakdown of the marriage.
The court enters the following orders:
 1. A decree of dissolution of the parties' marriage shall enter on the grounds of irretrievable breakdown of the marriage.
 2. Custody of the minor child, Daniel Rifkin, shall be with the plaintiff with reasonable and flexible visitation to the defendant.
 3. The defendant shall pay alimony to the plaintiff in the amount of $150.00 per week, which shall reduce three (3) years from this date to an amount of $1.00 per year, terminable upon the earliest to occur of the following events: death of either parties, the plaintiff's remarriage or her cohabitation in accordance with the provisions of § 46b-86(b). An immediate order for wage withholding shall issue to secure this order for alimony.
4. The plaintiff shall pay alimony to the defendant in an amount of $1.00 per year, terminable upon the earliest to occur of the following events: death of either of the parties, the defendant's remarriage or his cohabitation in accordance with the provisions of § 46b-86(b).
5. The defendant shall pay child support to the plaintiff for the minor child, Daniel, in the amount of $175.00 per week until the death of either party, the death of the child, the child's graduation from high school, or March 30, 2000, whichever event first occurs. An immediate order for wage withholding shall issue to secure this order for support.
6. The plaintiff shall maintain health insurance for the minor child, Daniel. The parties shall divide equally any unreimbursed medical expenses for Daniel including medical, dental, orthodontic, surgical, psychological and optical expenses. CT Page 7665
7. The defendant shall assign all of his right, title and interest in and to the real property 38 Crest Terrace in Fairfield, Connecticut, to the plaintiff. The plaintiff shall thereafter be wholly responsible upon the outstanding mortgage and home equity line of credit (described as a second mortgage on both parties' financial affidavits) and shall indemnify and save harmless the defendant from any claim or demand thereon. The plaintiff shall further be wholly responsible for all outstanding expenses in connection with the premises including, but not by way of limitation, homeowner's insurance, all utilities including fuel oil, trash collection, cable television, home repairs, and maintenance.
8. The plaintiff shall be wholly responsible upon the outstanding indebtedness to her parents in the sum of $50,000 (plaintiff's exhibit B) and shall indemnify and hold harmless the defendant upon the same.
9. The plaintiff shall be entitled to the household contents at 38 Crest Terrace except that the defendant shall be entitled to his "books, tapes, a couple of paintings, clock, clothes and personal effects." If there is any dispute between the parties in dividing the foregoing tangible personal property, the parties shall return to court within forty-five (45) days of the date hereof for further clarification of this paragraph of the court's orders.
10. The defendant shall retain as wholly his such tangible personal property as he has in his possession in New Hampshire.
11. The defendant shall retain as wholly his stock ownership in Suncook Trim Corporation, free of any claim or demand by the plaintiff.
12. The defendant shall be entitled to the tax escrow account presently being held by Louis Strasser, free of any claim or demand by the plaintiff. The defendant shall be entitled to the mortgage interest and real estate tax deductions on the real property at 38 Crest Terrace for 1997. The plaintiff shall be entitled to the dependency exemption for Daniel if it is of benefit to her. If not, the defendant shall be entitled to the dependency exemption for Daniel. CT Page 7666
13. The defendant shall transfer all of his right, title and interest in and to the 1994 Pontiac Bonneville automobile and the 1987 Ford Tempo automobile to the plaintiff and she shall be responsible for any outstanding property taxes for said automobiles on the list of October 1, 1997.
14. The plaintiff shall retain as hers, free of any claim or demand by the defendant, the following assets:
 a. her interest in the Postol Family Partnership; b. her jewelry and furs inherited from her mother; c. her People's Bank savings and checking accounts; d. her IDS Mutual Fund, shares of Occidental and shares of Eastgroup Property; e. her life insurance insuring the defendant's life; f. any life insurance insuring her own life.
15. The defendant shall retain as his, free of any claim or demand by the plaintiff, the following assets:
 a. his 1965 Chevrolet automobile; b. his money market account at the Bank of Boston; c. his checking account at the Bank of New Hampshire; d. his pension plan; e. his IRA; f. his jewelry and books; g. his $250,000 term life insurance policy insuring his life.
16. The defendant shall name his son and his daughter as equal co-beneficiaries of his $250,000 term life insurance policy for so long as he is obligated to pay support for son Daniel.
17. The plaintiff and defendant shall file individual tax returns for 1997 unless they mutually agree to file jointly. The deductions shall be in accordance with paragraph 16 hereof.
18. Each party shall be responsible for her or his own debts, whether or not listed in her or his financial affidavit and shall indemnify and hold harmless the other against any claim or demand thereon.
19. Each of the parties shall be responsible for her or his own attorney's fees. CT Page 7667
Judgment shall enter in accordance with the foregoing.
EDGAR W. BASSICK, III JUDGE TRIAL REFEREE